UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS F. LYNCH, JR.,

                Plaintiff,

      -vs-                                  07-CV-249-JTC

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.

---

      Plaintiff Thomas F. Lynch, Jr., initiated this action pursuant to the judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted, and plaintiff's motion is denied.

## **BACKGROUND**

      Plaintiff was born in 1955 (Tr. 38).[1] He completed high school in a special education program (Tr. 74), and has past work experience from 1983 to 2003 as a restaurant cook and busboy (Tr. 69, 78).

      Plaintiff filed applications for DIB and SSI on December 22, 2003, alleging disability due to seizure disorder and borderline intellectual functioning (Tr. 38-40; *see also* Tr. 305-

---

[1] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

11, 317-20). Upon denial of his applications at the initial level of agency review, plaintiff requested a hearing, which was held by teleconference on March 6, 2006 before Administrative Law Judge ("ALJ") William Curtin (Tr. 322-347). Plaintiff testified at the hearing and was represented by counsel.

After considering the case de novo, ALJ Curtin issued a decision on April 6, 2006, finding that plaintiff was not disabled within the meaning of the Act (Tr. 17-22). Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, including seizure disorder and borderline intellectual functioning, did not meet or equal the level of severity of any impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 19-20). More specifically, the ALJ found that plaintiff's seizures did not occur frequently enough to preclude him from performing work, and that plaintiff was "consistently non-compliant" with taking his prescribed medications (Tr. 20). The ALJ considered plaintiff's allegations and testimony regarding his symptoms, but found plaintiff to be "not entirely credible" in this regard (T. 20). The ALJ then found that, other than his seizure disorder, the medical evidence revealed no physical limitations. Accordingly, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") for "heavy-exertion" work,[2] with certain limitations due to his seizure disorder (*i.e.*, avoiding driving, working at heights, and working with heavy machinery) and borderline intellectual functioning (*i.e.*, limited to performing

---

[2]"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

simple one- and two-step tasks) which did not prevent him from returning to his past work as a cook (Tr. 21).

ALJ Curtin's decision became the final decision of the Commissioner on February 15, 2007, when the Appeals Council denied review (Tr. 5- 8). Plaintiff then filed this action for judicial review of the final agency determination, and both parties moved for judgment on the pleadings.

In support of his motion, plaintiff contends that the ALJ erred by failing to consider Social Security Ruling ("SSR") 96-8p, which sets forth the requirements for assessing a claimant's RFC, and by failing to elicit the testimony of a vocational expert to clarify whether plaintiff could perform his past relevant work or any other work in the economy. The Commissioner contends that the ALJ's determination is supported by substantial evidence and should be affirmed.

## DISCUSSION

**I.  Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for

those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.     Standard for Determining Eligibility for Disability Benefits

To be eligible for DIB or SSI benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for

benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, as mentioned above, the ALJ determined at step four of the sequential evaluation process that plaintiff had the RFC to perform "heavy-exertion" work, which included his past work as a restaurant cook. The ALJ reasoned that, since plaintiff had worked as a cook from 1983 to 2003 and had been having seizures since he was 17 years

old, "his seizures do not now prevent him from working as a cook." (Tr. 21). Alternatively, the ALJ found that application of Medical-Vocational Rule 204.00[3] would likewise result in a finding of not disabled.

Plaintiff argues that these findings do not comport with SSR 96-8p, and were made without consideration of any vocational testimony which would have clarified plaintiff's capacity for performing his past relevant work or any other in the national economy. Each of these arguments are addressed in turn.

### III.  SSR 96-8p

On July 2, 1996, the Social Security Administration issued SSR 96-p to clarify its policy regarding the assessment of RFC in initial claims for DIB and SSI benefits. As stated in the ruling, the ALJ's RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including physical abilities (such as sitting, standing, walking, lifting, carrying, pushing, or pulling), mental abilities (such as understanding, remembering, and carrying out instructions) and other abilities affected by the impairments. SSR 96-8p,

---

[3]Medical-Vocational Rule 204.00 provides:

*Maximum sustained work capability limited to heavy work (or very heavy work) as a result of severe medically determinable impairment(s).* The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work--either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

1996 WL 374184, at *1 (S.S.A. 1996) (citing subpar. (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945). "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* As explained in somewhat greater detail in the ruling:

> [W]ithout the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

*Id.* at *3.

SSR 96-8p also discusses the requirements for assessment of mental RFC at steps four and five of the sequential evaluation process "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF [Psychiatric Review Technique Form]." *Id.* at *4. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6.

Plaintiff contends that the ALJ failed to conduct a function-by-function assessment of physical and mental limitations, as required by SSR 96-8p. However, the court's review of the ALJ's determination, considered in conjunction with the administrative record as a whole, indicates that the ALJ properly assessed the medical evidence in reaching his conclusion as to plaintiff's RFC.

With respect to plaintiff's physical RFC, the ALJ noted that the medical records revealed no evidence of physical limitations other than seizures, which did not occur frequently enough to preclude plaintiff from engaging in heavy work. This finding is supported by substantial evidence, including a "Physical Residual Functional Capacity Assessment" completed by a State agency disability analyst reporting no exertional, postural, or manipulative limitations (*see* Tr. 238-43). Accordingly, there was no basis for the ALJ to conduct the function-by-function assessment of work-related physical abilities contemplated by SSR 96-8p.

With respect to mental RFC, the ALJ discussed the "Intellectual Evaluation" performed by Dr. Thomas Dickinson on March 8, 2004 (*see* Tr. 218-23), which indicated that plaintiff attended high school in special education classes, graduated in 1973, and worked as a cook and busboy in a restaurant for 20 years. Intelligence testing revealed IQ scores of verbal 79, performance 72, and full scale 74, placing him in the borderline range of intellectual functioning. He could read at the third grade level and spell at the fourth grade level, but could not count 35 cents in mixed change. According to Dr. Dickinson, plaintiff had the ability to "follow and understand simple job instructions and perform tasks of repetitious type with mild supervision." (Tr. 21, 222).

Plaintiff contends that this limited analysis falls short of the requirements discussed in SSR 96-8p for assessing mental RFC–particularly, the itemization of functions summarized on the PRTF. However, the administrative record contains a PRTF completed by Dr. Michael Moses, a State agency review psychologist, on March 16, 2004 (*see* Tr. 248-61), as well as a "Mental Residual Functional Capacity Assessment" (Tr. 244-47), completed by Dr. Moses on the same date. Although the ALJ did not explicitly refer

to the information in these reports, the court's review of the record makes it clear that both reports were based upon, and are consistent with, the findings reported by Dr. Dickinson and accepted by the ALJ.

More specifically, Dr. Moses explicitly mentioned Dr. Dickinson's evaluation in his mental RFC and psychiatric review technique assessment (*see* Tr. 260), finding that plaintiff was not significantly limited in the ability to remember locations and work-like procedures, or in the ability to understand and remember very short and simple instructions (Tr. 244).  Dr. Moses also indicated that plaintiff retained the ability to carry out very short and simple instructions, with moderate limitations in the ability to understand, remember, and carry out detailed instructions (Tr. 244).  Dr. Moses further rated plaintiff as having no restrictions in his activities of daily living, and only mild difficulties in maintaining social functioning or in maintaining concentration, persistence, or pace (Tr. 258).

These assessments by Dr. Moses are fully consistent with the limitations found by Dr. Dickinson.  Accordingly, the ALJ's failure to refer to Dr. Moses' reports is, at best, harmless error, since consideration of the information contained in the reports would not have changed the outcome of the hearing determination.  *See e.g., Seltzer v. Commissioner of Social Security*, 2007 WL 4561120, at *10 (E.D.N.Y. December 18, 2007) (even if ALJ fails to affirmatively develop the record and/or consider all relevant evidence, court can still affirm decision if error is deemed to be harmless) (*Walzer v. Chater*, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (ALJ's failure to discuss treating physician's report was harmless error where consideration of report would not have changed outcome).

Based on this analysis, the court concludes that ALJ Curtin's RFC assessment sufficiently comports with the requirements outlined by the Social Security Administration in SSR 96-8p, and is supported by substantial evidence in the record.

### IV.  Vocational Expert Testimony

Plaintiff also contends that the ALJ erred by failing to elicit the testimony of a vocational expert to clarify plaintiff's capacity for performing his past relevant work, or any other work in the national economy.  However, as the government correctly points out, the decision to call a vocational expert to provide testimony or other evidence pertaining to an individual's residual functional capacity for past relevant work is discretionary, not mandatory.  *See, e.g.*, *Lopez v. Commissioner of Social Security*, 2008 WL 741042, at *4 (3d Cir. March 20, 2008) (citing 20 C.F.R. § 404.1560(b)(2) and SSR 00-4p (2000)).

Accordingly, the ALJ's failure to call or consult a vocational expert in this case does not constitute legal error of the type requiring reversal or remand for further proceedings.

### CONCLUSION

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination is supported by substantial evidence in the record, and was based on an appropriate view of the legal standards for assessing plaintiff's residual functional capacity to perform his past relevant work.  Accordingly, the Commissioner's motion for judgment on the pleadings (Item 7) is granted, and plaintiff's cross-motion for judgment on the pleadings (Item 9) is denied.

The Clerk of the Court is directed to enter judgment for the Commissioner.

So ordered.

                                   \s\ John T. Curtin
                                   JOHN T. CURTIN
                              United States District Judge

Dated: August 7, 2008
p:\pending\2007\07-249.jul2.08